Edmundo P. Robaina (AZ Bar No. 018125)
ROBAINA & KRESIN PLLC
One E. Camelback Road, Suite 710
Phoenix, Arizona 85012
Telephone: (602) 682-6450
Facsimile:  (602) 682-6455
epr@robainalaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Colburn | |
| Plaintiff, | No. |
| vs. | |
| UNUM Life Insurance Company of America, | **COMPLAINT** |
| Defendant. | |

## PRELIMINARY STATEMENT

1.     Plaintiff Jennifer Colburn, hereinafter referred to as "Plaintiff," brings this ERISA action against Unum Life Insurance Company of America, in its capacity as Administrator of the Noteworthy Medical Systems, Inc. Long Term Disability Plan, hereinafter referred to as "Defendant."  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.   Plaintiff is covered under the policy by virtue of her employment with Noteworthy Medical Systems, Inc.

## PARTIES

2.     Plaintiff is a citizen and resident of Tempe, Arizona.

3.     Defendant is a properly organized business entity doing business in the State of Arizona.

4.     The disability plan at issue in the case at bar was funded and administered by Defendant.

5.     Defendant is a business entity doing business in the District of Arizona. Defendant may be served with process by serving its registered agent, Director of Insurance, 2910 North 44th Street, 2nd Floor, Phoenix, Arizona 85018.

## JURISDICTION AND VENUE

6.     This court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that the claim arises under the laws of the United States of America.  Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

7.     Venue in the District of Arizona is proper by virtue of Defendant doing business in the District of Arizona.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).  Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*). See Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant.  *Varsic*, 607 F.2d at 248." *See Frost v. ReliOn, Inc*., 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007).  Under ERISA's nationwide service of process provision, a district court may exercise personal

1    jurisdiction over the defendant if it determines that the defendant has sufficient ties to

2    the United States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,*

3    *97 F.3d 822, 825-26 (5th Cir. 1996)*, citing *Busch v. Buchman, Buchman & O'Brien,*

4    *Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)*.  Here, Defendant is "found" within the

5    District of Arizona, as it does business here, and the court has personal jurisdiction over

6    Defendant, as it has sufficient ties to the United States.

7                            **<u>CONTRACTUAL AND FIDUCIARY RELATIONSHIP</u>**

8            8.      Plaintiff has been a covered beneficiary under a group disability benefits

9    policy issued by Defendant at all times relevant to this action.  Said policy became

10   effective April 1, 2002.

11          9.      The disability policy at issue was obtained by Plaintiff by virtue of

12   Plaintiff's employment with Noteworthy Medical Systems, Inc. at the time of Plaintiff's

13   onset of disability.

14          10.     Under the terms of the policy, Defendant administered the Plan and

15   retained the sole authority to grant or deny benefits to applicants.

16          11.     Defendant funds the Plan benefits.

17          12.     Because the Defendant both funds the plan benefits and retains the sole

18   authority to grant or deny benefits, Defendant has an inherent conflict of interest.

19          13.     Because of the conflict of interest described above, Defendant's decision

20   to deny disability benefits should be reviewed by this Court under a *de novo* standard of

21   review.

22          14.     Further, in order for the Plan Administrator's decisions to be reviewed by

23   this Court under an "arbitrary and capricious" standard, the Plan must properly give the

24   Plan Administrator "discretion" to make said decisions within the plain language in the

25   Plan.

26          15.     Defendant has a fiduciary obligation to administer the Plan fairly and to

27   furnish disability benefits according to the terms of the Plan.

28

**ADMINISTRATIVE APPEAL**

16.     Plaintiff is a 43 year old woman previously employed by Noteworthy Medical Systems, Inc. as an "EDI Manager."

17.     EDI Manager is classified under the Dictionary of Occupational Titles as Sedentary with an SVP of 7 and considered to be skilled work.

18.     Due to Plaintiff's degenerative and traumatic injuries, Plaintiff ceased actively working on March 2, 2009 as on this date Plaintiff developed cervicalgia and low back pain.

19.     Plaintiff alleges that she became disabled on March 3, 2009.

20.     Plaintiff filed for long term disability benefits through the Plan administered by the Defendant on May 10, 2009.

21.     Long term disability benefits were granted on October 16, 2009.

22.     On May 26, 2011, Defendant denied long term disability benefits under the Plan.  Said letter allowed Plaintiff 180 days to appeal this decision.

23.     At the time Defendant denied Plaintiff long term disability benefits, the disability standard in effect pursuant to the Plan was that Plaintiff must be considered unable to perform her "Own Occupation."

24.     If granted the plan would pay monthly benefit of $1,077.00.

25.     On June 16, 2011 Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

26.     Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

27.     Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the Plan.

28.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period.

1  Notably, the SSA's definition of disability is significantly more restrictive than
2  Defendant's as they require the claimant to be unable to work in "any occupation in the
3  National Economy."

4       29.    Defendant was provided documentation of the Social Security
5  Administration's finding that Plaintiff was found to be totally disabled under Title II and
6  Title XVI of the Social Security Act.

7       30.    On or about September 9, 2009, Defendant's internal vocational
8  consultant, Terri Hardiman, M.S., CRC, performed a paper review of Plaintiff's claim
9  file.

10       31.  On or about September 10, 2009, Defendant's internal vocational consultant,
11  Kim Walker, also performed a paper review of Plaintiff's claim file.

12       32.  On or about September 24, 2009, Defendant's internal consultant, Robert
13  Clinton, M.D., internal medicine, performed a paper review of Plaintiff's claim file.

14       33.    On or about October 16, 2009, Defendant's internal consultant, Robert
15  Clinton, M.D., internal medicine, performed another paper review of Plaintiff's claim
16  file.

17       34.  On or about November 26, 2009, Defendant's internal consultant, Robert
18  Clinton, M.D., internal medicine, performed another paper review of Plaintiff's claim
19  file.

20       35.    On or about March 16, 2010, Defendant's internal consultant, Robert
21  Clinton, M.D., internal medicine, performed another paper review of Plaintiff's claim
22  file.

23       36.    On or about April 12, 2011, Defendant's internal medical consultant, Peter
24  Kouros, D.O., FAAFP, osteopath, performed a paper review of Plaintiff's claim file.

25       37.  On or about April 12, 2011, Defendant's internal medical consultant, T.
26  Edward Collins, D.O., neurology, performed a paper review of Plaintiff's claim file.

27       38.  Defendant's internal consultants completed their reports without examining
28  Plaintiff.

- 5 -

39.     On January 5, 2012, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long term disability benefits.

40.     Defendant also notified Plaintiff on January 5, 2012 that Plaintiff had exhausted her administrative remedies.

41.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

42.     Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

43.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

44.     Plaintiff suffers from cervicalgia, low back pain, severe degenerative disc disease of the lumbar spine, cervical disc herniation, spondylosis, radiculitis/ radiculopathy, neuropathy and fibromyalgia.

45.     Treating physicians document continued chronic back pain, radicular symptoms, as well as decreased range of motion and weakness.

46.     Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to engage in any form of exertional activity.

47.     Further, Plaintiff's physical impairments have resulted in chronic pain and discomfort.

48.     Plaintiff's treating physicians document these symptoms.  Plaintiff does not assert that she suffers from said symptoms based solely on her own subjective allegations.

49.     Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

50.   However, Plaintiff continues to suffer from break through pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

51.   Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full time basis, meaning an 8 hour day, day after day, week after week, month after month.

52.   Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

53.   The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

54.   As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

55.   However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

56.   At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

57.   Defendant's determination was influenced by its conflict of interest.

58.   Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

59.  The LTD plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

60.  A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

61.   More information promotes accurate claims assessment.

62.     Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

### COUNT I

### WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

63.     Defendant incorporates those allegations contained in paragraphs 1 through 62 as though set forth at length herein.

64.     Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

    a.     Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

    b.     Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

    c.     Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious, and;

    d.     Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

### COUNT II

### ATTORNEY FEES AND COSTS

65.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 64 above.

66.     By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, Plaintiff demands judgment for the following:

A.      Grant Plaintiff declaratory relief, finding that she is entitled to all past due short term and long term disability benefits yet unpaid;

B.      Order Defendant to pay past short term and long term disability benefits retroactive to June 1, 2011 to the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.      Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.      Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.      For such other relief as may be deemed just and proper by the Court.

DATED this 26th day of July, 2013.

ROBAINA & KRESIN, P.L.L.C.

By /s/ Edmundo P. Robaina
Edmundo P. Robaina
Attorneys for Plaintiff